**Eric Gordon PETERSON, Plaintiff,**

v.

**STATE FARM LLOYDS, Defendant.**

**Cause No.: A–16–CA–493–SS**

United States District Court, W.D. Texas, Austin Division.

Signed 03/16/2017

Eric Gordon Peterson, Austin, TX, pro se.

J. Hampton Skelton, Edward F. Kaye, Skelton & Woody, Austin, TX, for Defendant.

## ORDER

SAM SPARKS, UNITED STATES DISTRICT JUDGE

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant State Farm Lloyds' Motion for Summary Judgment [# 14]. Plaintiff Eric Peterson did not file a timely response.[1] Having re-

---

1. Because Plaintiffs have not responded, they are deemed unopposed to the motion for sum-

viewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and order.

## Background

This is an insurance coverage dispute. Plaintiff owns a house in Austin, Texas, and obtained a homeowner's insurance policy (Policy) from Defendant for the policy period of June 7, 2014 through June 7, 2015. Mot. Summ. J. [# 14] (Harris Aff.); Notice Removal [# 1–1] Ex. A (Original Pet.) at 2. The Policy is modified by a dwelling foundation endorsement (DFE) and a water damage endorsement (WDE). Mot. Summ. J. [# 14] Ex. B (Policy) at SF–Peterson–000721, (DFE) at SF–Peterson–000762, (WDE) at SF–Peterson–000760–61.

In December 2014, Plaintiff discovered "his house and property had sustained damages during the time period which [Defendant] State Farm insured his house." Original Pet. at 2. Specifically, Plaintiff alleges Defendant and its agents "failed to timely detect ... leaks" in Plaintiff's plumbing system, "caused damage to [Plaintiff's] hot water supply lines, cut the lines during their testing, and cut holes in the walls of [Plaintiff's] house." *Id.* at 3. Plaintiff filed an insurance claim for the damage with Defendant, which Defendant then investigated. *Id.* at 2. On February 6, 2015, Defendant denied coverage for Plaintiff's claim. *Id.* at 3. According to Plaintiff, despite his repeated requests that Defendant "clarify the basis of its denial of coverage and refusal to pay," Defendant "provided no substance response and then refused to respond entirely to such inquiries." *Id.*

Plaintiffs filed the instant lawsuit in state court on March 22, 2016, alleging breach of contract, breach of duty of good

faith and fair dealing, violations of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act (DTPA). *Id.* at 3–7. Defendant filed a timely notice of removal based on diversity and the case was assigned to this Court. Notice Removal [# 1]. Defendant then moved for summary judgment on January 23, 2017. Mot. Summ. J. [# 14]. For the reasons that follow, the Court grants the motion.

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254–55, 106 S.Ct. 2505.

---

mary judgment. *See* Local Rule CV–7(e)(2) ("A response to a dispositive motion shall be filed not later than 14 days after the filing of the motion .... If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."). Nevertheless, the Court will proceed to the merits of the motion.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## II. Application

### A. Breach of Contract

■ In a diversity case such as this one, the Court applies Texas law. *Jimenez v. State Farm Lloyds*, 968 F.Supp. 330, 332 (W.D. Tex. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). To prevail on a breach of contract claim under Texas law, a plaintiff must prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). "Insurance policies are contracts" and are interpreted by the same rules as other contracts. *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001) (internal citation omitted).

■ Specifically, to recover for breach of an insurance policy, a plaintiff must allege facts showing that the alleged damages are covered by his insurance policy. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965); *Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997) ("Texas law clearly states that for an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy.") (internal citation omitted).

■ Plaintiff argues Defendant breached its duty under the Policy when it denied Plaintiff's claim for the damage to Plaintiff's "plumbing system, water supply and drain lines and ensuing losses and damages." Original Pet. at 2, 3–4. Defendant responds that Plaintiff's Policy does not cover this damage: "[a]ccess to plumbing leaks is not covered under the [P]olicy and is only provided in the [DFE] or in the [WDE] if there is damage to other insured premises caused by the leaks." Mot. Summ. J. [# 14] ¶¶ 2, 13.

Plaintiff's Policy, as modified by the WDE and DFE, states, in relevant part:

SECTION I—LOSSES NOT IN-SURED

. . .

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

f. except as specifically provided by this endorsement continuous or repeated seepage or leakage of water or steam from a:

. . .

(3) plumbing system . . . .

Except as stated in this endorsement we do not provide coverage for any loss described in SECTION I—LOSSES NOT INSURED.

Policy at SF–Peterson–000721; DFE at SF–Peterson–000762; WDE at SF–Peterson–000760–61. In addition, the DFE covers damage from foundation movement caused by plumbing leaks, including the cost of accessing or repairing the leaking plumbing system:

**Dwelling Foundation Coverage.** We cover loss caused by and consisting of settling, cracking, shrinking, bulging, or expansion of the foundation, floor slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred.

We do not cover loss to the system from which the water or steam escaped.

DFE at SF–Peterson–000762. Further, the WDE covers damage from deterioration, wet rot or dry rot of property caused by plumbing leaks, including the cost of accessing or repairing the leaking plumbing system:

**Water Damage Coverage.**

1. We cover the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or stream from a:

. . .

c. plumbing system . . . .

This coverage includes the cost of tearing out and replacing only that particular part of the building necessary to gain access to the specific point of that system or appliance from which seepage or leakage occurred.

2. We do not cover:

a. loss to the system or appliance from which the water or steam escaped.

WDE at SF–Peterson–000760.

Here, Plaintiff claims he suffered "actual physical loss to the house's plumbing systems." Original Pet. at 2. He also alleges Defendant and/or its agents caused damage to his water supply lines, drain lines, and the walls of his house. *Id.* at 2–3. According to the plain language of the Policy, the DFE, and the WDE, damage to the plumbing system itself is not covered. *See* Policy at SF–Peterson–000721 ("We do not insure for any loss . . . which consists of . . . seepage or leakage . . . from a . . . plumbing system."); DFE at SF–Peterson–000762 ("We do not cover loss to the system from which the water or steam escaped."); WDE at SF–Peterson–000760 ("We do not cover . . . loss to the system

or appliance from which the water or steam escaped.").

Further, the damage caused by Defendant or its agents in accessing Plaintiff's leaking plumbing system, such as the cut hot water supply lines and the holes in Plaintiff's walls, is not covered either. The DFE covers "the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage [that caused foundational damage] occurred." DFE at SF–Peterson–000762. Similarly, the WDE covers "the cost of tearing out and replacing only that particular part of the building necessary to gain access to the specific point of that system or appliance from which seepage or leakage [that caused deterioration, wet rot, or dry rot of property] occurred." WDE at SF–Peterson–000760. Because there is no evidence Plaintiff suffered from foundational damage, deterioration, wet rot, or dry rot, the DFE and WDE do not cover any damage caused by Defendant or its agents accessing Plaintiff's plumbing system. Thus, none of Plaintiff's alleged losses are covered by the Policy, DFE, or WDE,[2] and the record contains no other evidence Defendant breached its contract with Plaintiff. The Court GRANTS summary judgment for Defendant on Plaintiff's breach of contract claim.

## B. Breach of Duty of Good Faith and Fair Dealing

██ Under Texas law, there is a common law duty of good faith and fair dealing. See Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 50–51 (Tex. 1997). "The issue of the breach of the duty of good faith and fair dealing 'focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct' in handling the claim." Aleman v. Zenith Ins.

Co., 343 S.W.3d 817, 822 (Tex. App.–El Paso 2011, no pet.) (quoting Lyons v. Millers Cas. Ins. Co. of Tex., 866 S.W.2d 597, 601 (Tex. 1993)). Therefore, "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered." Giles, 950 S.W.2d 48, 50–51 (Tex. 1997); State Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998) ("[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear."). "Evidence that shows only a bona fide coverage dispute does not rise to the level of bad faith." Douglas v. State Farm Lloyds, 37 F.Supp.2d 532, 537 (S.D. Tex. 1999) (internal citation omitted) (applying Texas law).

██ Here, Plaintiff has presented no summary judgment evidence showing Defendant acted in bad faith when denying Plaintiff's claim. In fact, Plaintiff, failing to respond to Defendant's Requests for Admission, admitted Defendant and its agents never lied to Plaintiff about the Policy, his damages, or his claim and "treated [Plaintiff] fairly during [Defendant's] investigation of [Plaintiff's] claims." Mot. Summ. J. [# 14] Ex. D (RFA). Therefore, the Court GRANTS summary judgment with respect to Plaintiff's claim for breach of the duty of good faith and fair dealing.

## C. Statutory Claims

██ Plaintiff further alleges that Defendant's denial of his claim constituted violations of the Texas Insurance Code and the DTPA.

██ "The Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing, common law require-

---

**2.** Even if Plaintiff suffered damage that was covered by his Policy, Plaintiff has not provid-

ed any summary judgment evidence of that damage.

ments." *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994). Accordingly, under Texas law, "extra-contractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as bad faith causes of action." *Lawson v. Potomac Ins. Co.*, No. Civ. 3:98-CV-0692H, 1998 WL 641809, at *4 (N.D. Tex. Sept. 14, 1998) (citing *Higginbotham v. State Farm Mut. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)). Therefore, "in order to establish a statutory violation under the Insurance Code or the DTPA, the elements necessary to demonstrate an insurer's breach of the common law duty of good faith and fair dealing must be proven." *Douglas*, 37 F.Supp.2d at 544; *see also Giles*, 950 S.W.2d at 55 (holding "reasonableness" requirements of common law good faith apply equally in the statutory context).

The basis of Plaintiff's statutory claims is the same as the basis for his breach of good faith and fair dealing claim: Defendant wrongfully denied Plaintiff's policy benefits. Because there is no merit to Plaintiff's bad faith claim, there can be no liability for Plaintiff's statutory claims. *See Higginbotham*, 103 F.3d at 460; *Douglas*, 37 F.Supp.2d at 532. Further, there is no summary judgment evidence that Defendant at any time misrepresented a material fact regarding Plaintiff's policy benefits. The Court therefore GRANTS summary judgment on Plaintiff's claims under the Texas Insurance Code and the DTPA.

### Conclusion

Accordingly,

IT IS ORDERED that Defendant State Farm Lloyds' Motion for Summary Judgment [# 14] is GRANTED.