# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30346

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2014

Lyle W. Cayce
Clerk

WARREN R. WATKINS,

Plaintiff - Appellant

v.

RECREATION AND PARK COMMISSION FOR THE CITY OF BATON ROUGE,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-366

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Warren R. Watkins appeals the district court's order[1] granting summary judgment in favor of Defendant-Appellee Recreation and Park Commission for the City of Baton Rouge ("BREC"). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

No. 14-30346

I.

Watkins, an African-American male, was employed as a welder for BREC from 2004 to March 2012. Watkins's supervisors were Donnie Broussard and Mike Amond. At the time, Mark Lee and Justin Smith were assistant director and director of park operations.

Watkins claims that, during his employment with BREC, he was subjected to harassment and discrimination based on his race as well as retaliation when he complained about his treatment. Watkins alleges that other employees used racially charged language or symbols in his presence on three occasions. The most recent of these incidents occurred in April 2010. Watkins also alleges he was denied training opportunities and subjected to less favorable work conditions than a similarly situated white employee, Mike Hano. Watkins claims other white employees were subjected to less discipline than he was for similar transgressions.

Watkins filed his first complaint with the Equal Employment Opportunity Commission ("EEOC") in August 2011, which was processed by the Louisiana Commission on Human Rights in October 2011. He received a right to sue notice in March 2012.

In February 2012, Watkins refused to sign a work assignment sheet because he said it had a "booger" on it. Watkins reported the incident to the human resources department. In March 2012, Watkins took a work vehicle home during lunch. Following these incidents and others, Broussard and Amond had a counseling meeting with Watkins to discuss certain issues with his work performance, including his refusal to sign the work assignment sheet and his improper use of the company vehicle. Watkins refused to sign the memorandum of his counseling session and was told his refusal to do so was an act of insubordination. Watkins was suspended from work for three days without pay. At a meeting a few days later, Watkins still refused to sign the

2

No. 14-30346

counseling form and was terminated.  Watkins appealed his termination to the BREC Ad Hoc Peer Review Committee.  The committee recommended that Watkins be reinstated if he agreed to three conditions: (1) complying with BREC's rules and supervisors' instructions, including signing counseling acknowledgment forms and incident reports; (2) showing a willingness to improve cooperation and attitude; and (3) scheduling a counseling session with the Employee Assistance Program.  Watkins refused the offer of reinstatement and instead appealed to the Human Resources Grievances Committee.  At a hearing in June 2012, Watkins informed the committee that he did not want his job back but wanted to confront BREC employees regarding his termination.  Watkins was not reinstated.

On June 20, 2012, Watkins sued BREC.  Watkins alleged that BREC violated Title VII and Louisiana state law[2] by discriminating against Watkins based on his race, creating a hostile work environment, and retaliating against him after he complained.  Watkins filed a second complaint with the EEOC in August 2012, to address his termination, and received a right to sue letter in September 2012.

BREC moved for summary judgment in August 2013.  The district court granted summary judgment to BREC on all claims on December 26, 2013.  The court entered a final judgment on March 20, 2014.  Watkins timely appealed.

II.

We review the district court's grant of summary judgment de novo, construing all facts and evidence in the light most favorable to the nonmoving party.  *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009).  Summary judgment is appropriate when "there is no genuine dispute

---

[2] *See* LA. REV. STAT. §§ 23:332, :967.

3

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (per curiam).

The court below granted summary judgment in favor of BREC on each of Watkins's claims. As we conclude there are no genuine issues of material fact and that BREC is entitled to summary judgment on each of Watkins's claims, we affirm the lower court's ruling.

## A. *Hostile Work Environment*

To state a hostile work environment claim under Title VII or Louisiana state law, Watkins must show, *inter alia*, that "the harassment complained of affected a term, condition, or privilege of employment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citation and internal quotation marks omitted); *see also King v. Phelps Dunbar, LLP*, 743 So.2d 181, 187 (La. 1999) (noting that Louisiana's employment discrimination laws are similar in scope to federal laws and thus Louisiana courts look to federal jurisprudence in interpreting Louisiana law). To affect a "term, condition, or privilege of employment," the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Yellow Transp.*, 670 F.3d at 651 (citation and internal quotation marks omitted). In making this determination, the court considers all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation and internal quotation marks omitted). The Supreme Court has "made it clear that conduct must be extreme to amount to

a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Watkins contends that three incidents support his hostile work environment claim. However, he fails to proffer evidence showing that the alleged harassment affected a term, condition, or privilege of his employment. The three incidents cited by Watkins on appeal occurred over the course of his nearly eight-year career with BREC. While these incidents were offensive, they were not severe, pervasive, frequent, or physically threatening, nor did they interfere with his work performance. In fact, the conduct in this case "pale[s] in comparison" to conduct in cases in which courts have found a hostile work environment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (collecting cases); *see also Walker v. Thompson*, 214 F.3d 615, 619–22 (5th Cir. 2000) (holding that plaintiff survived summary judgment where evidence demonstrated years of inflammatory racial epithets). Though we strongly condemn the type of behavior alleged by Watkins, Title VII is not a "general civility code" for the workplace. *Faragher*, 524 U.S. at 788 (citation and internal quotation marks omitted). We therefore hold that summary judgment was properly granted on Watkins's hostile work environment claim.[3]

---

[3] BREC also alleges that the statute of limitations bars Watkins's claim, and we agree that this is an additional basis to affirm summary judgment on this claim. The most recent incident alleged occurred in April 2010. The statute of limitations for a hostile work environment claim is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) (limitations period is 300 days if plaintiff has instituted proceedings with a state or local agency with authority to grant or seek relief from such practice). The earliest charge filed with the EEOC is dated August 2011, more than 300 days after the date of the last incident. Though courts will "utilize[] the theory of a continuing violation in certain exceptional circumstances," Watkins's claim would have been evident by the date of the last incident. *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) ("[W]here a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she cannot reach back and base her suit on conduct that occurred outside the statute of limitations.").

No. 14-30346

*B. Discrimination and Retaliation*

The court analyzes discrimination and retaliation cases using the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] Under this framework, the plaintiff must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment condition; and (4) others similarly situated were treated more favorably. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005). To state a prima facie case of retaliation, the plaintiff must establish: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

If the plaintiff makes a prima facie showing, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (discrimination), and *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (retaliation)). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557.

There is no dispute that Watkins is a member of a protected class, was qualified for his job, and participated in a protected activity. Watkins argues

---

[4] Louisiana state law incorporates the same framework. *Decorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (applying Title VII framework to Louisiana discrimination claim); *Tatum v. United Parcel Serv., Inc.*, 79 So.3d 1094, 1103–04 (La. Ct. App. 5 Cir. 2011) (applying Title VII framework to retaliation claim under the Louisiana statute).

that several events constitute adverse employment actions against him: (1) disparate treatment as compared to Hano; (2) the counseling session; (3) the three-day suspension without pay; and (4) Watkins's termination.

The alleged preferential treatment of Hano does not support his discrimination claim because it is not an adverse employment action.[5] With respect to the counseling session, suspension, and termination,[6] which Watkins alleges support both his discrimination and retaliation claims, BREC offered a number of reasons for these measures, which Watkins fails to rebut with summary judgment evidence showing pretext. BREC cites several deficiencies in Watkins's performance that led to the counseling session. Nothing in the record suggests any of these claimed deficiencies was false.[7] Watkins attempts to rebut one of the proffered reasons by showing another employee behaved similarly without repercussion; however, that employee was not similarly situated.[8]

---

[5] In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court expanded the definition of "adverse employment action" in the context of retaliation. 548 U.S. at 59–70. Even under a broad reading, the alleged disparate treatment is not sufficiently adverse to support Watkins's claim.

[6] We assume, without deciding, that the counseling session constitutes an adverse employment action under the discrimination and retaliation frameworks. *See id.* at 68 (defining "adverse employment action" for a retaliation claim as an action that "a reasonable employee would have found . . . materially adverse [and] might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (internal quotation marks omitted)).

[7] Watkins attempts to show these reasons are pretext by stating in his brief that "after he asked for a meeting about his complaints, [Broussard] told [him] he would be 'spied' upon or 'subjected to increased surveillance.'" At his deposition, however, Watkins admitted the complaint discussed with Broussard related to missing tools.

[8] One of the reasons for the counseling session was that Watkins took his BREC truck home for lunch. Watkins alleges that another employee took a work truck home for lunch without punishment. However, the evidence indicates that the employee had permission, while Watkins did not. Thus, this example does not support Watkins's claims. *Cf. Lee v. Kan. City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009) ("If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the

Moreover, BREC provided evidence that the reason for Watkins's suspension and ultimate termination was his refusal to sign forms memorializing the counseling session and his conversations with the human resources department. Watkins fails to rebut this reason as pretextual with competent summary judgment evidence. *See McCoy*, 492 F.3d at 562 ("'[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.'" (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997))). In both instances, Watkins was warned that his refusal to sign the forms was considered insubordination that could result in disciplinary action, including termination. Watkins admits he refused to sign these documents. Watkins does not offer evidence that other employees were treated differently under similar circumstances. Further, Watkins refused a subsequent offer of reinstatement. These facts do not support Watkins's discrimination or retaliation claims. Accordingly, summary judgment was properly granted in favor of BREC on Watkins's discrimination and retaliation claims.

Finally, Watkins argues that he is entitled to protection under Louisiana's whistleblower statute, which prohibits an employer from taking "reprisal against an employee who in good faith, and after advising the employer of the violation of the law . . . [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." LA. REV. STAT. § 23:967. While Watkins may be correct that the acts he complained of in 2007 violate Louisiana state law, he fails to show a causal nexus between his

---

purposes of an employment discrimination analysis." (emphasis in original) (citation and internal quotation marks omitted)).

complaint and the alleged reprisals.[9]  A whistleblower claim, like a Title VII retaliation claim, requires proof of a causal link between the plaintiff's disclosure of a violation of state law and any acts of reprisal.  *Tatum*, 79 So.3d at 1104.  The retaliatory actions Watkins alleges took place several years later: Hano was hired in 2010, and Watkins's counseling, suspension, and termination took place in 2012.  Temporal proximity only supports causation "when the protected act and the adverse employment action are 'very close' in time."  *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that a three-month or four-month period may be close enough to make a prima facie showing of causation but holding that a twenty-month period was not)).  Thus, summary judgment was properly granted on Watkins's whistleblower claim.

AFFIRMED.

---

[9] He did not raise the same issue in his 2011 complaints to the EEOC or to the Louisiana Commission on Human Rights.